Next case of the morning is Prough v. Greene County for the appellant, Ms. Lorton, and for the athlete, Mr. Cook. You may be seated. Good morning. My name is Allison Lorton. I'm an attorney from Jerseyville, Illinois, with the firm of Whitman & Lorton. We represent Dennis K. Prough, the independent administrator of the estate of his father, Dennis Prough. A matter that was filed in Greene County, Illinois, against the defendants, former Sheriff Graham, Deputy Kerry Page, the Greene County Sheriff's Department, as well as Greene County, Illinois. The trial court dismissed our complaint on two grounds, for the failure to state a cause of action, as well as the statutory governmental immunities. On May 18, 2009, Brenda Lorton, the daughter of the plaintiff's decedent, Dennis Prough, filed a petition in Jersey County, seeking the involuntary admission of her brother, Mark Prough. Pursuant to Section 704 of the Illinois Mental Health Code, Mark Prough had an extensive history of mental illness, violence, and threatened violence amongst his family members. On May 18, 2009, Judge Pistorius granted her petition. Unsure of the location of Mark Prough at that time, two orders were entered as a result of that petition. One order found Mark Prough was subject to involuntary admission. It directed a peace officer to take Mark Prough into custody, and to transport him to Jerseyville Community Hospital for examination. The second order also found Mark Prough subject to involuntary admission, directed a peace officer to take him into custody, and the alternative, transport him to a facility, Springfield Memorial Hospital, for examination. The court also issued a separate writ by the clerk of the court, reflecting the instructions, and demanding the detention of Mark Prough to be taken to either facility for examination. Now, on Sunday, July 19, 2009, the Jerseyville Police Department received a tip that Mark Prough was back in the area. Specifically, Mark Prough's vehicle was spotted at the firehouse located in Kane, Illinois. Kane is located in Greene County, just outside Jersey County's jurisdiction. Jerseyville Police Department then contacted the Greene County Sheriff's Department, and requested assistance in the execution of their involuntary committal orders. Their instructions were pretty clear. We believe Mark is in Greene County, we have a court order, and we need you to pick him up. Deputy Kerry Page, simply and in so many choice words, according to the dispatch recordings, said no. He was not going to comply with the Jersey County orders. Less than 24 hours after this request, Mark Prough was not detained, and eventually would murder his own father in Jersey County, Illinois. Now, I understand that law enforcement are granted significant and explicit statutory and common law immunities For example, they are immune from negligently enforcing or executing a law for failing to provide a police protection service, prevent a crime, apprehend a criminal, failure to make an arrest, or even releasing someone in custody. And for good reason, for in all reality, if these protections were not in place, they simply wouldn't be able to do what they do. However, the reason I am before this court this morning is because of one distinguishing fact that makes this case different and factually distinguishable from nearly every immunity, statutory, or common law relied upon by the trial court as well as the defendants. And that distinguishing fact is that May 18, 2009, involuntary admission order entered by the Jersey County Circuit Court. Deputy Page was not asked on that morning to execute or enforce any law. He was not asked to prevent a crime or apprehend a criminal. He wasn't even asked to make an arrest. Deputy Page was asked to comply with the command of an order entered in conjunction with the mental health code. Deputy Page was asked to take Mark Crowe, a mentally ill individual who had been found by Judge Pistorius, to be a threat to himself or others, to take him to a facility so a mental health examination can be conducted. And as a result of this distinguishing fact, I believe that the defendants in this matter have a non-discretionary duty then to comply with the terms of this court order. Therefore, if this is a non-discretionary duty under the law, the common law and statutory immunities simply do not apply because it's a non-discretionary act or a non-discretionary duty. First and foremost, the trial court made a finding that the detention order was no longer enforceable on July 19, 2009. First and foremost, this finding is inconsequential. It fails to relieve the defendants of their duty to comply with the court order. Defendants have no standing to raise defects in the orders themselves or the underlying committal process as a defense to their inaction. Contrary to the trial court's finding, there is no expiration listed on the order. There's no such time limitation on these orders in the Mental Health Code and no cited authority for this proposition that the orders were valid for simply one day. Admittedly, even this court has commented in numerous opinions of the poor matter in which the committal process has been carried out in our lower courts. Now, during preliminary discovery, it was even revealed that there's no factual record or even the petition available upon which this involuntary committal order was based upon. Undoubtedly, had Mark Pro challenged his involuntary commitment, he would have been successful. But that's precisely my point. The person who has the position of protecting his liberty interest is Mark Pro himself, not the defendants, not the law enforcement who are legislatively directed under the Mental Health Code to help effectuate and carry out these orders. If an order which is valid on its face would ultimately have been proven invalid, this does not relieve a sheriff's deputy from his duty to enforce it. The courts are charged with ensuring Mark Pro's liberty interests are protected under the Mental Health Code, not Deputy Kerry Page. To suggest that on Sunday, July 19th, as the defendants have argued, that Deputy Page was somehow concerned with Mark Pro's liberty interests or the underlying validity of the committal process in Jersey County is simply nonsensical. If this court finds that there was a valid and enforceable order on July 19th, 2009, I believe that the plaintiff then has met its first element under a cause of action against the plaintiffs, a duty. A duty would then exist. The Illinois County's Code at Section 6019 states that sheriffs shall serve and execute within their respective counties and return all warrants, process, orders, and judgments of every description that may be legally directed or delivered to them. In our brief, we refer to the analysis in the Third District of the case of Mulder v. Rasmussen. In Mulder, the plaintiffs sought recovery based on a cause of action based on the cause of action in the county's code as well as negligence. The appellate court held that there is no direct cause of action pursuant to the county's code for the failure, in that case, to execute a warrant. And the appellate court also confirmed that the deputy owed no duty to the plaintiff because she did not meet any of the exceptions under the special duty doctrine. The plaintiff in that case, similarly to the plaintiff's argument here, asked the court to not apply the special duty doctrine, arguing that the failure to carry out a warrant is a ministerial act, a ministerial duty on behalf of law enforcement. The plaintiff argued, and the appellate court recognized, the distinction between ministerial duty and a discretionary duty. The appellate court noted that under the doctrine of common law public official immunity, liability is not regularly imposed on public officials for the negligent performance of discretionary acts, whereas the exercise of ministerial tasks entails a duty of reasonable care to those whose injury as a result of the negligent performance of that duty is foreseeable. The appellate court disagreed with the plaintiff's contention and held that still the who, what, where, when, and how to execute a warrant are inherently discretionary activities, as well as the statutory immunities found at 4-102 and 107 that explicitly give law enforcement immunity for failing to make an arrest. In this case, I asked the court to draw the distinction based not just upon the existence of a warrant, but based upon the existence of the order for involuntary admission. The plaintiff's position that the execution of this court order is a ministerial act, not discretionary. Albeit not controlling authority, our Seventh Circuit Federal Court in Scott v. O'Grady has cited that Illinois law gives the county sheriff no discretion in executing court orders and punishes him if he does not. The Illinois County's Code imposes liability for noncompliance or disobedience of any sheriff to perform the command of any warrant, process, order, or judgment under Section 6019. What was he commanded to do? He was commanded to take Mark Crowe into custody. On what date? The date listed on the order was May 18, 2009. And when did he get it? July 19, 2009. The meaning? Defendants would argue that that would mean that the order is expired. However, I don't read the order that way and I don't believe the Mental Health Code would interpret the order that way. To require that a petition be refiled every day until a mentally ill individual is picked up, I don't believe is the intent of the statute. Did the Greene County officer ever have a piece of paper, a copy of the order, anything? No. Nothing but a phone call? Nothing but a phone call. Secondly, the statutory immunities of 4102 and 4107 that grant law enforcement immunities for failure to arrest someone don't explicitly apply to court orders, especially orders pursuant to the Mental Health Code. Our fourth district has also recognized this distinction between a ministerial act and a discretionary act in the case of Beach v. Cross cited by the defendants. This court in Beach noted that exceptions to the foregoing immunity have been held to arise only under special circumstances or where the conduct of the officers is purely ministerial and involves no discretion. The third district court in Mulder reiterated a second point in order for liability to be imposed for the negligent performance of a ministerial act. They still noted that the injury must still be foreseeable and the plaintiffs contend that the foreseeability element is still present in this case. In other words, was the death of Dennis Crow at the hands of Mark Crow, the subject of the involuntary admission order, reasonably foreseeable? The very definition of one subject to involuntary admission is one, in so many words, who is found to be a danger to himself or others. If such a threat did not exist, the order wouldn't be entered. A second aspect of the foreseeability argument relied upon by the trial court involves the common law immunity regarding law enforcement has no duty to protect individuals of society from the criminal acts of third parties. This principle was cited in Romine and Tedrick by the trial court. The trial court specifically found that Greene County Sheriff's Department did not have a duty to protect Dennis Crow from the criminal acts of his son, Mark. However, this rule is simply inapplicable because there is no mysterious third party or independent third party. The third party who committed the harm is the party who is the subject of the order that Greene County was asked to enforce and comply with. The one whom the court sought to protect the public from, Mark Crow, is the one who ultimately caused the harm in this case to his father. The second element of our cause of action then would be a breach of the ministerial duty. The plaintiff's complaint is pled in the context of willful and wanton conduct. Not as a separate cause of action, but simply the breach. It's irrefutable that Deputy Page, knowingly and intentionally, said no, I'm not going to comply with this court order. Therefore, his breach was at the very least negligent, but at least sufficient to rise to the level of willful. Well, when the Jersey County authorities got the message from the Greene County deputy that he wasn't going to travel to Kane to look for this fellow, what did the Jersey County people do? Eventually, they ended up traveling outside of their jurisdiction to see if he was still there. What kind of time period is that? Travel from Jerseyville? No, no, the eventually part. The facts I'm relying upon are based on transcript proceedings, and they don't, unfortunately, say a date or a time from when these phone calls were placed and when a deputy was discharged out there. I mean, because the point of my question is that Kane is about equidistant between Carrollton and Jerseyville. So if they got the no from the Greene County deputy and got in the car and went up there and he wasn't there, you know. It's a very good point, and I would suggest at that point that we've got a factual issue, whether or not if he's got a duty to comply, whether or not it would have done any good. And I think that's a factual issue that could be determined by a jury at that point who is in a better position, the point being he was asked and refused. The third element of our cause of action against the defendants would be proximate cause. Both plaintiffs and the defendants rely on the Illinois Supreme Court case of Young v. Brico Arms in its analysis. The first element of proximate cause would be the cause and fact. Whether the defendant's conduct was a material element and a substantial factor in bringing about the injury. Had the Greene County Sheriff's Department, specifically Deputy Kerry Page, detained Mark Crowe, transported him to an examination either to Springfield or to Jerseyville, it's unlikely that within that same window, less than 24 hours later, he would not have been able to kill his father. Again, it's the acts of Mark Crowe that don't break the causal connection because it's those exact acts and that exact harm that the order was intended to prevent. Second aspect of proximate cause is the legal cause. Whether the intervening cause is of the type that a reasonable person would likely see as a result of his conduct. The intervening cause here again is Mark Crowe, the one who is subject to this involuntary admittal order. Judge Pistorius had already made a finding that Mark Crowe likely hurt himself or others. It's reasonable to assume that an order directing the involuntary admission of an individual, if ignored, the harm that the order sought to prevent, could ultimately occur. In this case, it did. The second basis for which the trial court dismissed our complaint was based upon the statutory immunities found in the Illinois Tort Immunity Act, specifically 4102 and 4107. Failure to make an arrest and the general law enforcement police protection immunities. Again, if the court agrees with the plaintiff's contention that the defendant's duty to enforce these court orders was in fact a ministerial duty, the immunity protection simply would not apply. The immunity protects discretionary acts. And finally, the last count in our complaint dismissed by the trial court was a cause of action against Green County, Illinois, based upon the indemnification provision found in section 9102 of the Tort Immunity Act. That indemnification provision states that a local public entity is empowered and directed to pay any tort judgment or settlement for damages for which it or an employee is liable. Our Supreme Court in Carver v. Sheriff of LaSalle County analyzed the county sheriff statutory scheme. Illinois Supreme Court ultimately held that a county is obligated to provide the funds to a county sheriff to pay an official capacity judgment entered against the sheriff's office under section 9102. In this case, the complaint filed suit against Graham, then the current sheriff of Green County, Deputy Sheriff Kerry Page, and the office of the Green County Sheriff's Department. There are no individual capacity claims. The breaches, the failure to act is all based upon a sheriff's obligation under the county's code to do certain things, comply with certain court orders. Green County is a proper party based, albeit on persuasive authority, as a result of our Supreme Court's answer of the certified question that Green County is a necessary party to the action. They're the one who's going to be ultimately financially responsible for any judgment or settlement entered in the cause. Even the Supreme Court even seems to suggest that a county who's ultimately going to be responsible for settlement or judgment maintain an interest in the underlying suit to protect its interests. And finally, there's simply no authority for the defendant's contention that Green County cannot be named in this suit prior to the entry of a judgment or to a settlement. The reason why I'm standing before this court is because of one fact that I believe makes this case distinguishable from the common law immunities and much of the authorities that the defendant discussed and we've extensively briefed in this appeal. It's because of the involuntary committal order and the Illinois Mental Health Code. That distinguishing fact that on May 18, 2009, detention order which finds Mark Crowe subject to involuntary admission directs a peace officer, any peace officer, to take him into custody and take him to a facility for a mental health examination. These orders were enforceable on July 19, 2009 when directed to Deputy Page for enforcement. The defendants argue and the trial court even held that the orders were not enforceable on July 19, 2009. But to order that an order is only enforceable upon the date that it's issued is not a reality of our court system and I don't believe the underlying intent under the Mental Health Code. The order does not state an expiration or limitation and the defendants do not cite any authority in support of one. Deputy Page never himself physically saw the order. Jerseyville Police Department merely requested his compliance with it. Deputy Page was not concerned with Mark Crowe's constitutional due process rights as the defendants assert. And regardless, the defendants have no standing to assert any alleged deficiency in the order or the underlying committal process. Your time has expired. You'll have additional time on rebuttal. Thank you. Mr. Cook. May it please the court. Counsel. My name is James Cook and I represent the defendants, the Greene County defendants. This case involves the two orders that are attached to the plaintiff's complaint that are appended to the briefs in this case. Please keep your voice up. Yes, sir. That's not a microphone, it's a recording device. Very good. The orders are form orders. They're very brief. They do not contain any findings of any kind. For counsel to stand before you and say Judge Pistorius found anything and then come back and explain that well of course the court file, the mental health court file, is missing even the petition that asked for Mark Crowe's detention is a statement that has no basis in the record at all. All we have, all parties have in this case, are the orders that Judge Pistorius actually entered. Indeed, Deputy Page, almost two months after the orders were entered, did not have the orders in hand when he was called while he was off duty. He was getting ready to go on duty. He was at his home in Hillview, Illinois, which is on the far northwestern corner of Greene County. This is not a matter where he was going to be driving from Carrollton down to Kane. He was so far away he realized he couldn't get there in time to find Mark Crowe, who apparently everybody in Jersey County was looking for. So what happened was the Jerseyville Police Department sent someone, a deputy, up to Kane to locate Mr. Crowe, Mark Crowe, and didn't find him. They also contacted the village of Kane's police officer, Delbert Gilliam, and he assisted them. He didn't find Mr. Crowe. So the facts are a little different than we have argued here in this court this morning. What's significant in this... What exactly did the Greene County deputy say? His conversation with the Greene County dispatcher, as I recall, is not transcribed. There was some conversation that the dispatcher had with Deputy Page and with the caller, Officer Richard Portwood from the Jerseyville Police Department, about whether there was an enforceable order or warrant or anything on file anyplace. The dispatcher asked this because the dispatcher had sometime before run Mark Crowe through the NCIS database, and I believe also through the state police database, and he came up clear or valid or clean, something like that. So there was no record that the Greene County Sheriff's Department had about any kind of enforceable order at all. There was that kind of discussion. There was also some discussion that I understand from Deputy Page that he was not going to be able to drive all the way down to Kane and locate Mark Crowe because Crowe was at a coffee klatch, if you will, at the firehouse. They played cards and had coffee early every morning or many mornings every week, and he was there, apparently. He was there with his father, not just on that day but on other days. So that's really the factual context here. But I must say, none of that is in the record. What is in the record are these two orders that Judge Pistorius entered. They don't contain any findings. They're form orders that simply say pick up Mark Crowe and take him to Memorial Hospital in Springfield on May 18, 2009. And the second order is identical, but it said take him to Jerseyville Community Hospital. And that's all that we have. And if we look at the face of those orders, which I contend are unambiguous, it's very clear that they had expired. The intent may have been, as Judge Meyer said in his order dismissing the plaintiff's submitted complaint in this case, the intent may have been that Mark Crowe be taken into custody on some other day other than May 18. But on the face of those orders, they only said May 18. And in Greene County, they had no way of knowing if those orders had already been enforced or if they were valid in any way or anything because the dispatcher had run this through the system and didn't have any indication of continuing validity. What this case is about is immunity, certainly, statutory immunity under the Tort Immunity Act, but also the Section 2-615 issues of whether the plaintiff can plead a duty. That is, whether Deputy Page owed a duty and whether the plaintiff has alleged, therefore, a recognizable cause of action, a cause of action that's recognized under Illinois law. That's what the plaintiff has to do to satisfy the requirements of Section 2-615. The plaintiff has not done that in this case. The plaintiff argues to this court that there is a special duty exception to the public duty rule, but the plaintiff doesn't mention the important fact, the necessary fact, to establish that a special duty is owed by Deputy Page that somehow Mark Proe or his father are in custody or under the control of Deputy Page when he failed to take action. That's essential to establish the special duty exception. This court also has recognized a voluntary undertaking in the John White III case that's pending before the Supreme Court. This isn't anything like John White III. It's not at all because there was no voluntary undertaking of any kind by Deputy Page here. The plaintiff has clearly stated to this court, and it's fairly alleged in the plaintiff's Second Amendment complaint, that Deputy Page refused to take action. He couldn't take action, therefore he refused. The important thing is he certainly did not voluntarily undertake to go do something or to go pick up Mark Proe, and no one relied on a voluntary undertaking by Deputy Page to go pick this man up. We have duty that we're talking about on the one hand in terms of the Section 2-615 motion and in terms of the Section 2-619 motion and immunity. And if the plaintiff can get past the Section 2-615 arguments, the plaintiff certainly cannot get past the Section 2-619 argument that Section 4-102 of the Tort Immunity Act gives Deputy Page and all of the defendants absolute immunity from negligence claims and from willful and wanton claims. And this is pleaded solely as a willful and wanton case. The immunity that is afforded by Section 4-102 is absolute, and it is applicable as the Supreme Court clearly said, specifically said in the DeSmet v. Rock Island County case, it's comprehensive in those cases where the police take no action or where they take inadequate action. This is a case that's pleaded as a no-action case. Absolute immunity under Section 4-102 applies. Before my time runs out, I need to touch on a couple other things here. Proximate causation is certainly missing in this case. It has not been pled in any way. This is a situation where there's an intervening criminal act by Mark Pro that is the cause of his father's death. That's an absolute bar to a finding of proximate cause under the Young v. Brico Arms case. And on a separate point, if I might get into the cross-appeal, this is a situation where former Sheriff Graham and Deputy Page were not originally sued within the period of limitation by the plaintiff. Instead, the plaintiff named Greene County and its Sheriff's Department and unknowns. Under Illinois law, suits against unknowns are a nullity. They are void ab initio, as they say, from the beginning. And suing unknowns does not permit the plaintiff to come back after the period of limitation has passed and amend the complaint to name for the first time then-Sheriff Graham. Very shortly after he was joined in the first amended complaint, he left office and he was succeeded by Sheriff Rob McMillan. And the plaintiff attempted to also join Deputy Page at that time after the statute of limitation had expired, or the period of limitation had expired. Deputy Page was brought in as an unknown. The plaintiff has clearly stated here today that their intent is to assert an official capacity claim, not an individual capacity claim against anyone. So these are all official capacity claims intended to be collected from the county under the Carver v. LaSalle County reasoning. However, what is the role of former Sheriff Graham now in this case? He's out of office. He has no official capacity. He has no ability to settle the case or to do anything about the case on behalf of the Sheriff's Department. His successor is the public entity known as the Sheriff. Actually, instead of the plaintiff suing the office of the Sheriff or the Sheriff's Department, as has been done in this case, the plaintiff should have sued the Sheriff by name, Sheriff Graham, while he was Sheriff, and then substitute his successor after he left office, or at this point, sue Sheriff McMillan because he is the public entity who is the Sheriff under the Illinois Constitution. I would submit to you that it is unnecessary and inappropriate, nonsensical, if you will, to keep former Sheriff Graham in this case if the claim against him is intended to be an official capacity claim. And I will concede the plaintiff has very likely sued the Sheriff on an official capacity claim by naming first the office of Sheriff and then the Sheriff's Department. If I would have done it, I would have named the Sheriff by name. He is the public entity, but I think that's a formality in this case. So we have the Sheriff's Department in the case, or the Sheriff in the case. There's no need to keep former Sheriff Graham there. An even more problematic problem for the plaintiff is the claim against Deputy Page. He was never sued during the period of limitation. He was brought in when we raised the problem with suing an unknown, that that is a nullity. So it's very clear under Section 216D of the Code of Civil Procedure that the claim against Deputy Page cannot stand at all. He truly has been misjoined. By the same token, former Sheriff Graham has been misjoined, although his status is a little different than the status occupied by Deputy Page. Thank you. Thank you. Rebuttal? Thank you. I would like to briefly address your question earlier. What did Deputy Page, according to the transcript of the recording, say? Now, I don't like to argue too much about facts that aren't in the record yet. We haven't made it that far in this case. We were dismissed outright. But according to the transcript proceedings that were transmitted to Jerseyville PD, Green County Dispatch conveyed Mark Crowe's reaction as an expletive no. He's Jersey County's problem. Mark Crowe was not Green County's problem. And that's the real issue why I'm here today. If this dismissal is allowed to stand, the message sent to our law enforcement is that their involvement in dealing with individuals who are mentally ill is voluntary. The Mental Health Code isn't drafted that way. They specifically include and direct law enforcement's involvement as a critical player to help carry out this process. The Mental Health Code is an ongoing effort by our legislature, and our courts for that matter, to continually improve on a deficient system dealing with our mentally ill in this state. To not mandate law enforcement's compliance with orders that are executed in accordance with allows for mentally ill individuals to continually fall through the cracks and for the worst case scenario to occur, which is exactly what happened in this case. Now this case deals with a section of our community to which the Mental Health Code attempts to strike a balance between protecting their liberty interests while at the same time protecting society from their increasingly violent manifestations of their disease, from their mental illness. Law enforcement plays a critical role in effecting that balance and protecting those interests. And therefore, the duty to comply with the commands of these orders executed in accordance with the Mental Health Code has to be non-discretionary. For the alternative basically renders those provisions, such as involuntary commitment of one who's not before the court requesting the police involvement, would render it meaningless in this case. Therefore, the plaintiff respectfully requests this court to reverse the decision of the trial court and remand for further proceedings. Do you have a response to the argument that Deputy Page was not named within the limitations period? The original complaint named the Office of the Green County Sheriff's Department. And as I said before, these are all official capacity claims. There's no individual action being filed against Deputy Page. The deficiencies against Deputy Page were for his failure to act in accordance with his duties as a deputy. These are not individually claimed. The plaintiff would assert that the action was properly preserved with the action that was filed against the office of itself. The named individual is that being Sheriff Graham, who at the time, technically the first amended complaint was filed, was still acting sheriff. Albeit, one month later he did resign and Sheriff McMillan is now the current entity. But at the time it was Sheriff McMillan and Deputy Page. To respond to your question. Thank you. Thank you very much. We'll take this matter under advisement and stand in recess until the readiness of the next case.